11 N.J. Super. 69 (1950)
78 A.2d 118
IRVING SOLOMON, PLAINTIFF-RESPONDENT,
v.
MICHAEL E. GOLDBERG, DORIS N. GOLDBERG, DEFENDANTS-APPELLANTS, AND ELEANOR HOLDING CO., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1950.
Decided December 28, 1950.
*71 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Abram A. Lebson argued the cause for respondent.
Mr. Harry Chashin argued the cause for appellants (Messrs. Marcus & Levy, attorneys).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Plaintiff's complaint was brought in the Chancery Division and sought an accounting for one-half of the net profits realized by the individual defendants from the sale of lands title to which was in the corporate defendant, their personal holding corporation. Plaintiff obtained a judgment against the individual defendants who have appealed.
Plaintiff and defendant-appellants are next door neighbors in Englewood. Defendant Michael E. Goldberg is in the lumber business. In 1946 Goldberg was in the market for a lumber yard and plaintiff located one in Cresskill and, as a favor to Goldberg and without any understanding he was to be compensated for his services, negotiated its purchase for Goldberg who took title December 20, 1946, in the name of defendant Eleanor Holding Company, the personal holding corporation.
A few months later Goldberg decided to sell the property. Plaintiff testified Goldberg came to him and proposed plaintiff try to find a buyer, "I would like to get my money back." Plaintiff told Goldberg he thought the property was "worth at least three times the price you paid for it," and Goldberg said, "If you feel that way about it, let's go partners;" "You *72 don't have to put anything up;" "You go ahead and see what you can get for that property, and everything over and above my costs, we are fifty-fifty." The property was sold largely through plaintiff's efforts and defendants realized a net profit of $6,772.70. It is the alleged breach of the oral agreement to divide this profit which is the subject of plaintiff's action.
Defendants argue the judgment cannot be sustained because the contract is a real estate brokerage agreement and plaintiff can have no action for its breach for the reasons, (1) plaintiff was not a licensed real estate broker authorized to conduct the transaction as required by R.S. 45:15-1 et seq., and (2) the oral contract was not confirmed by a writing in the manner required by the statute of frauds, R.S. 25:1-9.
Plaintiff admitted at the trial he was not a licensed real estate broker. We agree the contract was a brokerage agreement for breach of which plaintiff as an unlicensed broker can have no recovery and that the judgment must be reversed. We have no occasion, therefore, to consider the question of the contract's enforceability in light of the statute of frauds.
Plaintiff's services were limited to the listing of the property with a number of brokers as available for sale and of conducting negotiations with the ultimate purchaser. The trial court in its opinion filed January 20, 1950, found plaintiff's services were intended to be and were in fact confined to "his efforts in selling the property." Thus plaintiff's services actual and contemplated were only such as are performed by a mere broker within the definition of broker found in R.S. 45:15-3, "* * * a person * * * who for a fee, commission or other valuable consideration, lists for sale, sells * * * or offers or attempts to negotiate a sale * * * of real estate * * * for others." The measure of his compensation upon a profit-sharing basis, as distinct from a percentage commission, does not save the contract from classification as a brokerage agreement. Mendles v. Danish, 74 N.J.L. 333 (Sup. Ct. 1907).
Plaintiff maintains R.S. 45:15-4 applies. This section excepts from the licensing provisions "* * * any person, *73 firm, partnership, association or corporation who, as a bona fide owner or lessor, shall perform any of the aforesaid acts with reference to property owned by him. * * *." The proofs established the property was owned by defendants through their nominee, the personal holding corporation. Plaintiff had no ownership in the property and manifestly he cannot bring himself within this exception. Annotations, 137 A.L.R. 6, at p. 125; see Gingarelli v. Gingarelli, 124 N.J.L. 299 (Sup. Ct. 1940).
Moreover, plaintiff does not come under the protection of the decisions holding that real estate brokerage licenses are not necessary where services beyond those of a mere broker are to be performed. Agreements requiring services beyond the mere listing for and negotiating of sale of the real estate of another may be actionable when the facts support an inference the one rendering these services is not a mere broker but a promoter; Montgomery v. East Ridgelawn Cemetery, 189 Misc. 99, 68 N.Y.S.2d 836 (Sup. Ct. 1947); affirmed, 75 N.Y.S.2d 287 (App. Div. 1946), construing R.S. 45:15-3 of New Jersey statute; or a developer whose services also require him to improve the owner's lands, Ruta v. Werner, 1 N.J. Super. 455 (Ch. 1948); or whose agreement is with another broker in a joint promotion venture to sell lands of a real estate development company. Chew v. Markheim, 125 N.J.L. 595 (Sup. Ct. 1941).
The services plaintiff was to render and in fact rendered under this agreement were such that a real estate broker's license was, under the public policy of this State, a condition precedent to the maintenance by plaintiff of an action for his compensation. Corson v. Keane, 4 N.J. 221 (1950); Kenney v. Paterson Milk & Cream Co., 110 N.J.L. 141 (E. & A. 1933).
There is, however, the question whether the defense could be availed of by defendants at the time they first raised it in the court below. It was not affirmatively pleaded in the answer under Rule 3:8-3. The answer was a general denial of the making of any agreement. No motion to amend the *74 answer to plead the defense was made at the pretrial conference. The pretrial order was made June 9, 1949, and, so far as pertinent here, provided the issue to be determined at the trial was whether there existed any "agreement between the parties to share the profits of the sale equally." The trial transcript discloses no application to amend or suggestion by defendants of reliance on this defense made during the trial. It was only after the trial judge filed his opinion January 20, 1950, finding against defendants on the issue whether there was an agreement that defendants employed new counsel who, about two months later and six months after the trial, for the first time raised the question.
On March 17, 1950, the defendants, upon motion duly noticed, applied to the trial judge for an order, among other things, vacating the "decision" and "directing judgment in favor of the defendants" or, alternatively, granting a new trial with leave to amend the answer in manner evidenced in tendered written amendments (see Grobart v. Society, etc., Useful Manufactures, 2 N.J. 136 (1949)), among others, pleading as an affirmative defense that the oral agreement was "in violation of Title 45, Chapter 15, Sections 1, 2 and 3 of the Revised Statutes," "and is, therefore, void, illegal and unenforceable." The motion was denied by order entered March 20, 1950.
On March 24, 1950, an interlocutory judgment was entered on the January 20th opinion adjudging defendants' liability, but not assessing the amount of damages; final judgment was entered April 21, 1950.
Litigants will not generally be permitted after trial to challenge the result upon a theory of law different from that upon which they submitted the case for determination. See Sensfelder v. Stokes, 69 N.J.L. 86 (Sup. Ct. 1903); DeBennedetto v. Friedman, 102 N.J.L. 161 (E. & A. 1925). Rule 3:16, governing pretrial procedure, as it read at the time of the trial, expressly provided, moreover, the pretrial order should control the subsequent course of the action, unless modified at the trial to prevent manifest injustice. Jenkins *75 v. Devine Foods, Inc., 3 N.J. 450 (1950); Anderson v. Modica, 4 N.J. 383 (1950).
Defendants' motion in the circumstances would normally be viewed as having come too late. We are, however, concerned here not alone with the rights of the parties inter sese; there is a consideration of public policy involved in the enforceability of this contract, and this factor constrains us to believe the general principle should not be applied in this case. The public policy of this State is not to lend unlicensed brokers the aid of the courts to enforce their brokerage agreements. Corson v. Keane, supra; Kenney v. Paterson Milk & Cream Co., supra; see Gionti v. Crown Motor Freight Co., 128 N.J.L. 407, 411 (E. & A. 1942); cf. Modern Industrial Bank v. Taub, 134 N.J.L. 260 (E. & A. 1946).
So, inasmuch as the controlling effect of the defense under R.S. 45:15 was raised before the entry of either judgment adjudicating the rights of the parties, Kushinsky v. Samuelson, 142 N.J. Eq. 729 (E. & A. 1948), we think defendants' motion for judgment in their favor should have been granted in the interest of the due administration of justice and in furtherance of this public policy. Cf. McCabe v. Kupper, 4 N.J. Super. 178 (App. Div. 1949).
Plaintiff argues finally the appeal should be dismissed because the notice of appeal was served and filed more than 30 days after the entry of the interlocutory judgment. The argument is not well founded. The interlocutory judgment was not appealable; it is not within the defined interlocutory judgments appealable under Rule 4:2-2. The appeal was properly taken from the final judgment. Rules 1:2-5(b) and 4:2-5.
Reversed and returned to the Chancery Division with direction to enter judgment for defendants.