32 N.J. Super. 343 (1954)
108 A.2d 271
DENNIS PALKOSKI, PLAINTIFF-RESPONDENT,
v.
JOSE M. GARCIA, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1954.
Decided October 8, 1954.
*345 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. James A. Major argued the cause for the respondent (Mr. John A. Christie, attorney).
Mr. Paul T. Huckin argued the cause for the appellants (Messrs. Huckin & Huckin, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
Appellant Jose M. Garcia organized three corporations, Northern Valley Builders Supply Company, American Home Builders and Brookview Gardens, Inc., and owned and controlled all of the stock of each one. Northern operated a lumber yard; American was a construction company and Brookview was the owner of a tract of land on which American was to build a large garden apartment. Apparently the three companies were established with the construction of that apartment as the primary object in view.
In the summer of 1946 respondent Palkoski was engaged by Garcia to manage the lumber yard for Northern Valley at a weekly salary, and his principal duty seems to have been to keep American supplied with lumber for the Brookview apartment.
Later, the testimony shows that sometime in June 1950, at Garcia's request, Palkoski took over the duties of superintendent of construction for American. It appears also that he did some work around the apartment project which he said was in behalf of Brookview. However, no additional salary arrangement was made for these extra efforts although the record shows that he received a $10 weekly increase at *346 some stage of the proceedings. His salary checks came from Northern Valley, but some evidence was introduced to show that a substantial portion of the sum involved was allocated to Brookview Gardens, although he said he was not aware of it.
The record shows that Palkoski became vice-president of all three corporations. Just when this occurred was not shown. He testified that he was to receive one share of stock of each company but it was never actually issued to him.
His services for all three companies terminated in June 1952 and a month later this action was brought for certain moneys due him.
The complaint sought recovery on four counts, one against Garcia and one against each of the three corporations. Recovery was sought against American Homes in the amount of $2,900 for moneys advanced to it on the promise of Garcia to make repayment; Northern Valley was sued for certain advances of the same type made to it; Brookview Gardens was charged with responsibility for commissions on rentals made on its behalf in the garden apartment by Palkoski under an agreement for payment thereof. Finally Garcia was sued on the charge that the advances referred to in the other counts were made to him personally and that the rental commission arrangement was likewise an individual responsibility.
Trial of the action resulted in a verdict of $5,209.63 against Brookview Gardens, Inc. on the rental commission agreement, one of $2,900 against Garcia for an advance which the jury found was made to him personally, and one of $2,743.38 against Northern Valley Builders Supply Company for advances made to it. The resulting judgments have been made the subject of this appeal.
The first point raised concerns the $5,209.63 judgment against Brookview Gardens, Inc., representing the balance due on the apartment rental commission agreement. The sole ground of attack is that since Palkoski was not a licensed real estate broker he cannot recover commissions for the rental of apartments.
*347 In this connection reliance is placed upon R.S. 45:15-1, which provided at the time in question:
"No person shall engage either directly or indirectly in the business of a real estate broker or salesman, temporarily or otherwise, except as otherwise provided in this article, without being licensed so to do as hereinafter provided."
A real estate broker was then defined to be "a person * * * who, for a fee, commission or other valuable consideration * * * rents, or offers or attempts to negotiate a * * * rental of real estate or an interest therein * * *." R.S. 45:15-3.
A real estate salesman was defined to be "any person who, for compensation, valuable consideration or commission, or other thing of value, is employed by a licensed real estate broker to * * * lease or rent, or offer to lease or rent any real estate for others, or who is an employee, agent or associate of any person, firm, corporation or association owning or leasing lands, and offering such lands at either public or private sale as a developer where such development consists of more than twenty lots." R.S. 45:15-3 (section 3).
It is undisputed that Palkoski never held either such a broker's or salesman's license. Of course, if a license was necessary under the circumstances presented, no recovery can be had because "the public policy of this State is not to lend unlicensed brokers the aid of the courts to enforce their brokerage agreements." Solomon v. Goldberg, 11 N.J. Super. 69 (App. Div. 1950); Corson v. Keane, 4 N.J. 221 (1950); Cohen v. Scola, 13 N.J. Super. 472 (App. Div. 1951). Even a single act, transaction or sale of the character described constitutes engaging in the business and necessitates a license. R.S. 45:15-3. However, Palkoski points to section 4 (R.S. 45:15-4) as authority for the contention that none was necessary. The section says:
"The provisions of this article shall not apply to any * * * corporation who, as a bona fide owner or lessor, shall perform any of the aforesaid acts with reference to property owned by him, * * *." *348 Once the appellant had met the burden of showing circumstances which ordinarily would call for the possession of a license, the task of going forward with proof to make the exception applicable rested upon him who relied upon the exception.
Since Brookview Gardens, Inc. owned the garden apartment and since a corporation can act only through agents or employees, respondent urges that as an employee of the corporate owner he is excluded from the license requirement.
If rental of the apartments involved was Palkoski's duty or part of or incidental to his duty as an employee of Brookview, in our judgment the contention would be sound. Weil v. Lambert, 183 Md. 233, 37 A.2d 312 (Ct. App. 1944); Black Forest Realty & Inv. Co. v. Clarke, 86 Colo. 454, 282 P. 878 (Sup. Ct. 1929); Cf. O'Neill v. Colonial Memorial Park, Inc., 121 N.J.L. 617 (Sup. Ct. 1939). It is interesting to note in passing that the Alabama statute with respect to the exemption of a corporate owner of land from the requirement of a license, specifically excludes "the regular employes thereof, with respect to the property so owned or leased, where such acts are performed in the regular course of, or as an incident to, the management of such property and the investment therein." Strumpf v. State, 31 Ala. App. 409, 18 So.2d 104 (Ct. App. 1944).
It is necessary therefore to consider whether Palkoski's rental activities were part of or incidental to the duties of his employment with Brookview. He was a vice-president of the corporation but the record contains no statement or outline of his duties as such, or in fact that he had any actual duties in that capacity. But his testimony does show specifically and positively that the rental commission agreement was no part of his regular duties as an employee of Northern Valley Builders Supply Co. or Brookview Gardens, Inc.; it was something completely independent and apart.
It appears that originally Brookview had a real estate agent handling the rentals of apartments in the project. After a time he became dissatisfied with the fee being paid to him for each rental and terminated the relation. Thereupon, *349 on behalf of Brookview, Garcia engaged Palkoski to handle the rentals. The arrangement was that he would be paid a commission of $50 for each rental and it was understood that his work in this connection was to be done in the evening, over weekends and on holidays. The $50 fee was obviously considered a commission; it is so designated in the schedule attached to the complaint and in the pretrial order.
Since it so plainly appears that the procurement of tenants was no part of the regular employment nor incidental to it, the situation is the same in legal effect as if he were a complete stranger to the corporate owner. Therefore, we conclude that the statutory exception has no application and Palkoski was required to have a license. For his failure in that regard, recovery must be denied to him. And we do not consider that the 1953 amendment to the Act (N.J.S.A. 45:15-3; L. 1953, c. 229), which requires any person employed by the owner "of lots or other parcels of real estate, at a stated salary, or upon a commission, or upon a salary and commission, or otherwise" to sell or exchange such real estate or parts thereof, in lots or other parcels, to obtain a license, militates against the view herein expressed.
Palkoski's relation to Brookview as a vice-president does not alter the situation. If he engaged in these rentals as an executive officer of the corporation in the pursuit of his duty or authority as such, a license would not appear to have been necessary. However, the record is barren of any proof as to what duty or authority was actually conferred upon him as vice-president; he may have been entirely a paper or a purely formal officer with no power to act for the corporation. But beyond this, as we have said, the facts demonstrate affirmatively that the search for tenants was made in a completely independent individual capacity, as an independent contractor, and without relation to his status in the corporation. Thus if any inference of per se corporate action is possible from the mere statement that he was a vice-president, it is neutralized by his own undisputed testimony.
While the same result would have been reached if the claim of appellant that the language of the court in Malinowski *350 v. Lincoln Developing Co., 103 N.J.L. 394 (E. & A. 1926), controls this issue were adopted, we incline to the belief that the case is not in point.
The problem there was limited solely to the question of whether a person who was employed exclusively for an owner on a commission basis to sell parcels of real estate, some building lots and others with houses on them, should be treated as a "broker or real estate agent" within the section of the statute of frauds which requires the contract of employment to be in writing. (R.S. 25:1-9). The licensing statute was not at all involved and there was neither consideration nor determination of whether the person seeking recovery was obliged to have a license as a condition to the validity of his contract.
Appellant Garcia argues also that the trial court erred in refusing to dismiss the action against him on the $2,900 loan. The ground urged is that at the close of the plaintiff's case a fatal variance existed between the pleadings as to this loan and the proof as adduced.
The argument overlooks that the $2,900 claim was included against Garcia individually in the first count of the complaint as well as against American Home Builders in the second count. The matter might have been refined further at the pretrial conference, but the pretrial order deals with it in terms even more general than the complaint.
Palkoski's testimony on both direct and cross-examination furnishes evidence that the loan was made to Garcia personally. All of this proof went in without objection for variance. Indeed, in the state of the pleadings such objection would not have been valid.
In any event, examination of the record satisfies us that even if there were substance to the claim of variance it would have been proper under R.R. 4:15-2 to submit the meritorious issue to the jury as was done by the court. There appears to be no support for a claim of prejudice and there was no motion for continuance or mistrial on that ground.
Finally, it is suggested by all appellants that a reversal should be ordered (1) because the trial court instructed the *351 jury to disregard certain statements made by counsel in summation concerning the law of partnership and the statute of frauds, and (2) because of the allowance of certain questions on the cross-examination of Garcia.
As to the first, it is sufficient to say that when the case was submitted to the jury neither the law of partnership nor the statute of frauds had any bearing on the issues to be decided. This seems to be conceded, but it is said that in some rather nebulous way they bore upon Palkoski's credibility. Assuming this to be so, we find no such prejudicial error as would warrant a reversal. R.R. 1:5-3(b).
With regard to the second point, generally the extent of cross-examination is a matter within the discretion of the trial judge and its exercise will not be interfered with in the absence of palpable mistake. Fielder v. Friedman, 124 N.J.L. 514 (E. & A. 1940). And further the questions objected to, while somewhat argumentative, as was suggested, did have some measure of relevancy on the issue of Garcia's credibility.
For the reasons stated the judgment against Brookview Gardens, Inc. is reversed and the record remanded for the entry of judgment in its favor. The other judgments are affirmed. No costs.