STATE OF NEW JERSEY BY GROVER C. RICHMAN, Jr., ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF, v. VINCENT L. GALLAHER, SUBSTITUTE INDENTURE TRUSTEE, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided February 15, 1957.

*Mr. Joseph Tomaselli,* attorney specially designated to prosecute this action, argued the cause for plaintiff; *Mr. Grover C. Richman, Jr.,* Attorney-General of the State of New Jersey, attorney.

*Mr. Vincent L. Gallaher* argued the cause *pro se.*

SCHETTINO, J. S. C. This is a case under the Escheat Act, *N. J. S. 2A:37-11 et seq.,* and under the Alternative Custody Act, *N. J. S. 2A:37-29 et seq.* The case has been submitted on stipulation of facts, memoranda of law and oral argument.

Defendant Vincent L. Gallaher, a substitute indenture trustee appointed June 24, 1946 by the United States District Court for the District of New Jersey, has in his custody the sum of $728.51, representing principal and interest due unknown bondholders of the St. Charles Hotel Company, a domestic corporation, adjudicated a bankrupt in the United States District Court by virtue of an involuntary petition in bankruptcy. Due to the vast amount of work, 12 years have been required for the Bankruptcy Court to complete its work. Defendant has through the Bankruptcy Court exhausted all remedies under the Bankruptcy Act, 11 *U. S. C. A.* § 1 *et seq.,* to notify and communicate with all creditors, with due notice and opportunity afforded the bankrupt for the protection of its interests. He collected $101,400 and distributed that amount less $728.51.

Defendant trustee and the Federal Bankruptcy Court have completed all proceedings relating to the bankruptcy of which the Federal Court admittedly has sole jurisdiction. Having done so, the plaintiff, State of New Jersey, applied before the United States District Court for the District of New Jersey, laying claim to this fund under its escheat laws and was granted permission to prosecute this claim in the Superior Court of New Jersey and report back to the federal court on this court's findings and determination.

The issues presented are: (1) Does the State of New Jersey have a right to escheat or take into protective custody

the unclaimed funds remaining in the custody or possession of a trustee appointed by the United States District Court in a bankruptcy proceeding involving a bankrupt New Jersey corporation, which unclaimed funds represent moneys due bondholders of the said corporation who are unknown or their whereabouts remain unknown for a period of five years; (2) are funds in the custody of the federal court included or excluded by statutory definition from escheat by *N. J. S.* 2A :37–11 ?

## I.

### Are Funds in the Custody of the Federal Court Included or Excluded from Escheat by *N. J. S.* 2A :37–11 *et seq.* (or Custody by *N. J. S.* 2A :37–29 *et seq.*)

*N. J. S.* 2A :37–11 provides, *inter alia,*

"The term 'personal property' as used in this article shall mean and include moneys, negotiable instruments, choses in action, interest, * * * but shall not mean and include real property or property in the custody of any court in this state, nor any personal property covered by chapter 199 of the laws of 1945 [*N. J. S. A.* 17 :9–18 to 26] ; nor any personal property covered by chapter 154 of the laws of 1946 [*N. J. S. A.* 17 :34–49 to 58]."

The question is raised as to whether or not "personal property in the custody of any court in this state" is intended to exclude funds under the jurisdiction of the Federal Bankruptcy Court.

In the case *State of New Jersey by Richman v. Sperry & Hutchinson Co.,* 23 *N. J.* 38 (1956), Mr. Justice Jacobs comprehensively summarized the legislative history of escheat and custody of abandoned property :

"We may freely refer to the history of this legislation for whatever aid it may furnish in ascertaining its true purpose and meaning. *Lloyd v. Vermeulen,* 22 *N. J.* 200, 206 (1956) ; *Deaney v. Linen Thread Co.,* 19 *N. J.* 578, 583 (1955) ; *Abbotts Dairies, Inc., v. Armstrong,* 14 *N. J.* 319, 323 (1954) ; *State v. McCall,* 14 *N. J.* 538, 545 (1954). See *Caputo v. Best Foods, Inc.,* 17 *N. J.* 259, 264

(1955) where Justice Heher aptly noted that 'the reason the law, *i. e.,* the motive which led to the making of it, is one of the most certain means of establishing the true sense of the words.'

The New Jersey Legislature first asserted its sovereign power to escheat personal property generally by its passage of *L.* 1946, *c.* 155. See *State by Van Riper v. American Sugar Refining Co.*, 20 *N. J.* 286 (1956). That act provides that whenever personal property within the State remains unclaimed for the period of 14 successive years it shall escheat to the State. \* \* \* the Legislature passed *L.* 1951, *c.* 304 which was primarily designed to enable the State to take custody of (and thereafter escheat) such personal property when it had remained unclaimed for five successive years.

In *State by Parsons v. United States Steel Corp.*, 22 *N. J.* 341, 353 (1956) this Court recently pointed out that 'the lawmakers intended to provide a means whereby the State might assert its right in timely fashion to overcome the obstacle imposed by limitations.' And in the same case it dispelled the notion that the 1951 enactment was to be construed narrowly; in the course of his opinion for the Court Justice Burling said 22 *N. J.*, at *page* 355:

'Nor do we think that the statute is to be strictly construed so far as stakeholders are concerned. Defendant calls attention to *State v. United States Steel Corporation*, 12 *N. J.* 38, 47 (1953), where it was said:

"It is a well settled principle that escheat and forfeiture are not favored by the law, and any doubt as to whether property is subject to escheat is resolved against the state."

The statement was made in response to the State's argument that dividends declared by the corporation less than 14 years prior to suit should be subject to escheat under *R. S.* 2:53–17 (now *N. J. S.* 2A:37–13) providing for escheat of personal property after expiration of the 14 year period. We held that dividends which had not attained the 14 year vintage were not subject to escheat until that time, but the declaration of strict interpretation was expressive of an attitude toward the unknown owner rather than the corporate debtor.'

We reaffirm the foregoing approach and reject the Chancery Division's view that the Custodial Escheat Act (*L.* 1951, *c.* 304—now *N. J. S.* 2A:37–29; *N. J. S.* 2A:37–30) is, in this proceeding between the State and the defendant stakeholder or obligor, to be viewed as a penalty enactment and to be construed narrowly. Insofar as the unknown owners or claimants are concerned they are not adversely affected by the Act; on the contrary its provisions have the remedial effect of increasing the period during which they may assert their claims without being barred by limitations. See *State v. American-Hawaiian Steamship Co.*, 29 *N. J. Super.* 116, 131 (*Ch. Div.* 1953). Although the State has the right to institute custody proceedings immediately after the lapse of five years, the claimants have the right to assert their claims against the State for a period of two years after the entry of judg-

ment and the delivery of the moneys in question to the State Treasurer. *N. J. S.* 2*A*:37–32. And even after the lapse of that period the claimants may have relief within the terms of *N. J. S.* 2A:37–40. Insofar as the defendant stakeholder or obligor is concerned the act likewise would have no significantly adverse effects, for such defendant would have no just claim to retain the moneys for its own benefit and its payment to the State Treasurer would protect it against later action by the unknown owners or claimants. See *N. J. S.* 2*A*:37–33. See also *State by Van Riper v. American Sugar Refining Co.*, *supra*, 20 *N. J.*, at *page* 297, where this court noted without dissent that 'New Jersey's quest for legitimate revenues to be used for the good of all of its citizens is in nowise to be condemned and its right to the unclaimed dividends is admittedly superior to that of the corporation which had custody but no moral or legal claim to their retention.' "

■ The reason for the language that personal property shall not mean and include real property or property in the custody of any court in this State, nor any personal property covered by chapter 199 of the *Laws of* 1945, *N. J. S. A.* 17:9–18 to 26; nor any personal property covered by *chapter* 154 of the *Laws of* 1946; *N. J. S. A.* 17:34–49 to 58; is that the Legislature had already adequately covered such properties in other legislation, *i. e.*, real property, *N. J. S.* 2*A*:37–1 to 10; bank funds, *N. J. S. A.* 17:9–18 to 26; insurance funds, *N. J. S. A.* 17:34–49 to 58; and deposits in the court of Chancery or the Superior Court unclaimed for ten years, *N. J. S.* 2*A*:15–76 to 85; and finally, property in the custody of certain county courts and officers, *R. S.* 40:26*A*–1 *et seq.* The Legislature intended to avoid conflict and duplication of escheat and custody over properties already covered by prior legislation and specifically intended to exclude a particular class, "property in the custody of any court in this state." I find that the legislative restriction applied not to courts generally but that the court referred to is a state court and not a Federal District Court located in New Jersey.

In *Sperry & Hutchinson Company v. Margetts,* 15 *N. J.* 203, 209 (1954), the Supreme Court declared that:

"The intention of the lawgiver is taken or presumed according to what is consonant to reason and good discretion. The particular

words are to be made responsive to the reason and spirit of the enactment. *Wright v. Vogt*, 7 *N. J.* 1 (1951). The purpose of construction is to bring the operation of the statute within the apparent intention of the Legislature."

And in *Maritime Petroleum Corp. v. City of Jersey City*, 1 *N. J.* 287, 298 (1949), Mr. Justice Heher for the Supreme Court stated:

"A statute is to be construed as a whole with reference to the system of which it is a part. Apparently conflicting provisions are to be reconciled in accord with the general intent. The true meaning of any clause or provision ordinarily is that which best comports with the subject and general object of the act. *Lewis' Sutherland Statutory Construction* (2d ed.) sec. 348."

By recognizing the broad public purpose which underlies the enactment of the Escheat and Custodial Acts, I conclude the Legislature clearly sought to avoid the escape from custody and escheat and did not seek to provide escape. I conclude that this property in the custody of the Federal Bankruptcy Court is not encompassed by the above legislative exclusion and is subject to *N. J. S.* 2A:37-11 *et seq.* and to 2A:37-29 *et seq.* unless reasons other than these statutory provisions bar the plaintiff's claim to the property.

## II.

### ARE FUNDS IN THE POSSESSION OR CONTROL OF THE FEDERAL COURT SUBJECT TO ESCHEAT OR CUSTODY BY THE STATE

A fund such as this, representing the balance of unclaimed money belonging to unknown bondholders, is owned in severalty and not in common. Such a fund is not a common fund but one which belongs to the respective bondholders severally in proportion to their holdings; and where the holders of some of the bonds do not appear, the other bondholders have no claim to the unpaid part of the fund. *Brown v. Pennsylvania Canal Co.*, 274 *F.* 467, 469 (*D. C. E. D. Pa.* 1921), affirmed in 279 *F.* 417, 418 (3 Cir. 1922).

We next consider the question of procedure involved in cases of this type. We find in *In re Escheat of Moneys in Custody of United States Treasury (Appeal of Commonwealth by Klein) 322 Pa. 481, 485–487, 186 A. 600 (Sup. Ct. 1936)* that:

" 'The regulation of the title and devolution of property within its limits is within the control and jurisdiction of the State.' *Cunnius v. Reading School District, 206 Pa. 469, 56 A. 16, 98 Am. St. Rep.* 790.

\* \* \* \* \* \* \* \*

The United States Attorney does not claim that the property has escheated to the federal government or that the federal government can escheat it. His contention is that the State has no power 'to escheat moneys presently in the Treasury of the United States.' \* \* \* It may be conceded that the State cannot take possession of property in the custody of the federal government, but that fact need not prevent the judicial determination by the state of the succession to unclaimed property within its borders. The argument made for the commonwealth concedes that the state court can make no order on the federal treasury or on any other representative of the federal government, requiring the delivery of the property to the escheator; but the contention is that as the District Court, in the proceeding brought by the escheator and referred to above, held that the court lacked power to declare an escheat and dismissed his petition without prejudice, this proceeding in the state court was necessarily instituted to determine the fact of escheat, and, the fact being found, to enable the commonwealth then to present its claim to the District Court in control of the fund pursuant to the Act of Congress. In the circumstances, therefore, we think the court should have proceeded with the case and should have made such determinations as the evidence may require, and if an escheat were found, to have restricted the enforcement of its order to the proper presentation of the commonwealth's claim in the District Court to enable that court to determine whether payment should be made to the commonwealth. Such an order would seem to be within the following language of the Chief Justice in *United States v. Bank of New York & Trust Company, 296 U. S. 463, 56 S. Ct. 343, 347, 80 L. Ed.* 331: 'This principle is applied in the discharge of the long-recognized duty of this court to give effect to such "methods of procedure as shall serve to conciliate the distinct and independent tribunals of the States and of the Union, so that they may co-operate as harmonious members of a judicial system coextensive with the United States." *Taylor v. Carryl, 20 How. 583, 595, 15 L. Ed.* 1028.' "

The case was remitted to the trial court, and it was there held that the state had the right to claim the funds in

question. The decision was appealed to the Supreme Court of Pennsylvania *In re Escheat of Moneys in Custody of United States Treasury (Appeal of the United States)* 326 *Pa.* 260, 192 *A.* 256 (*Sup. Ct.* 1937). The decision was affirmed and an appeal was taken to the United States Supreme Court. *United States v. Klein, Escheator of Pennsylvania,* 303 *U. S.* 276, 58 *S. Ct.* 536, 82 *L. Ed.* 840 (1938). The Court held that a state statute is not unconstitutional insofar as it purports to confer jurisdiction on a state tribunal to declare the escheat of moneys deposited in the registry of a federal court and later in the Treasury of the United States.

Mr. Justice Stone stated (303 *U. S.,* at *pages 279–283,* 58 *S. Ct.,* at *page* 538):

"Section 996 of the Revised Statutes as amended, 28 *U. S. C. A.* § 852 [28 *U. S. C. A.* § 2042], directs that when the right to moneys paid into federal courts has been adjudicated and they are unclaimed for more than five years, they shall be deposited in the Treasury of the United States, in the name of the United States. It further provides: 'Any person or persons or any corporation or company entitled to such money may, on petition to the court from which the money was received * * * and upon notice to the United States attorney and full proof of right thereto, obtain an order of court directing the payment of such money to the claimant, and the money deposited as aforesaid shall constitute and be a permanent appropriation for payments in obedience to such orders.'

The Government does not, in pleading or argument, set up any right, title or interest in the present fund adverse to the unknown bondholders. It does not contend that the fund has been or can be escheated to the United States. It agrees with the contention of appellee, which we accept as correctly interpreting the applicable federal statutes, that the fund remains subject to the order of the District Court to be paid to the persons lawfully entitled to it upon proof of their ownership. But it insists here, as in the state courts, that the decree declaring the escheat is an unconstitutional interference with a court of the United States, an invasion of its sovereignty, and is an attempt, void under the Fourteenth Amendment, to exercise jurisdiction over the absent bondholders and the moneys, neither of which are shown to be within the state.

While a federal court which has taken possession of property in the exercise of the judicial power conferred upon it by the Constitution and laws of the United States is said to acquire exclusive

jurisdiction, the jurisdiction is exclusive only in so far as restriction of the power of other courts is necessary for the federal court's appropriate control and disposition of the property. * * * Other courts having jurisdiction to adjudicate rights in the property do not, because the property is possessed by a federal court, lose power to render any judgment not in conflict with that court's authority to decide questions within its jurisdiction and to make effective such decisions by its control of the property. * * * Similarly a federal court may make a like adjudication with respect to property in the possession of a state court. * * *

In this case jurisdiction was acquired by the District Court, by reason of diversity of citizenship, to adjudicate the rights of the parties. That function performed, it now retains jurisdiction for the sole purpose of making disposition of the fund under its control, by ordering payment of it to the persons entitled as directed by the federal statute. Beyond whatever is needful and appropriate to the accomplishment of that end, the jurisdiction and possession of the federal district court does not operate to curtail the power which the state may constitutionally exercise over persons and property within its territory.

The present decree for escheat of the fund is not founded on possession and does not disturb or purport to affect the Treasury's posession of the fund or the District Court's authority over it. Nor could it do so. * * * At most the decree of the State Court purports to be an adjudication upon the title of the unknown claimants in the fund by a proceeding in the nature of an inquest of office as in the case of escheated lands, * * * and to confirm the authority of appellee to make claim to the moneys. It is subordinate to every right asserted and decreed in the federal suit and effective only so far as it establishes rights derived from them. Neither the nature of the suit in the District Court nor the federal statutes preclude transfer of or change in the interest of the unknown claimants, either by judicial proceedings in the state court or otherwise, pending final disposition of the fund by the federal court. Section 996 of the Revised Statutes as amended, 28 *U. S. C. A.* § 852, contemplates that changes in ownership of the fund may occur, since it provides that after the right to the fund has been finally adjudicated and it has been covered into the Treasury it shall be paid over to any person entitled, upon full proof of his right to receive it."

■ Thus a state court may declare the fact of custody or escheat even when the funds are in possession, or under the control of a federal court or turned over to the Treasury of the United States. See also *United States v. Klein, Escheator of Commonwealth of Pa.,* 106 *F. 2d* 213, 215 (3 *Cir.* 1939).

 I conclude that the sum of $728.51, in the custody of the United States District Court for the District of New Jersey, has remained unclaimed by the owners thereof for a period of five successive years and the owners' whereabouts have been unknown for the aforesaid period of time; that said sum is encompassed by both the Escheat and Custody Acts; that the State of New Jersey is entitled to custody of the said moneys; and finally that the State of New Jersey, through the Attorney-General or its authorized representatives, is directed and authorized to make application to the United States District Court for the District of New Jersey for an order directing that the amount of moneys so verified by the United States District Court be paid over to the plaintiff for and on behalf of the State of New Jersey without prejudice to any claim thereto by the United States.

Submit judgment.