**Maurice STAHL, Plaintiff,**

v.

**TOWNSHIP OF TEANECK and Joseph E. McLean, Administrator of the Public Housing and Development Authority of the State of New Jersey, in the Department of Conservation and Economic Development of the State of New Jersey, Defendants.**

**No. C 821–56.**

United States District Court

D. New Jersey.

May 28, 1958.

Morris Spritzer, New Brunswick, N. J., for plaintiff.

Grover C. Richman, Jr., Atty. Gen., by David Landau, Deputy Atty. Gen., for defendants.

FORMAN, Chief Judge.

This is an action brought by Maurice Stahl, a citizen of the State of New York, against the Township of Teaneck in Bergen County, New Jersey, and Joseph E. McLean, Administrator of the Public Housing and Development Authority of the State of New Jersey, wherein plaintiff seeks to recover a broker's fee allegedly due him of $25,007.50, plus interest and costs. This sum represents 5% of $500,150, the purchase price of a 72 apartment garden-type development originally constructed in 1947 as emergency housing for veterans, under authority of N.J.R.S. 55:14G–1 et seq., N.J. S.A., held in fee simple by the Township of Teaneck and leased to the Administrator until its sale pursuant to N.J.R.S. 55:-14G–12(g), N.J.S.A., following an agreement between the Township of Teaneck and the Administrator authorizing the Administrator to sell the property at public sale.

In furtherance of the proposed sale, the defendant Administrator advertised in New Jersey and New York newspapers, and caused to be mailed to a list of addresses maintained for such purpose, a brochure describing the property, together with forms for submitting a sealed bid. Included in the invitation to submit bids was a statement of conditions, only one of which, namely paragraph No. 10, is pertinent here. This paragraph reads as follows:

"(10) A fee of 5% of the purchase price will be paid by the seller to any authorized broker or attorney representing the successful bidder or bidders; however, same shall not be due and payable until after closing of title."

It is conceded by plaintiff that he was not a licensed New Jersey broker during the time relevant to the instant case, although he was a licensed New York broker and subsequently became a licensed New Jersey broker. Plaintiff alleges that he received one of the mailed invitations, following which he induced Sydney Jacoby, with whom he shared offices, to submit a bid which later was accepted. The successful bid contained plaintiff's name as broker.

Jacoby's bid specified that in the event of acceptance the deed was to be drawn to the Hill Street Realty Co., in which name the bid was accepted by the State House Commission. The Hill Street Realty Co. was incorporated as a New Jersey corporation subsequent to the submission of the bid and prior to the closing of title, with Stahl being listed as a prospective shareholder.

At the closing of title, Stahl presented his bill for $25,000 on a prescribed State voucher form but was told that there might be some question as to his right to the commission because it was discovered that he was not a licensed New Jersey broker. Payment was refused. Plaintiff then sought recovery before the Claims Committee of the New Jersey Legislature, which committee recommended an award of $500. This was approved by the Legislature, but plaintiff rejected the award and brought the instant suit.

Defendants raise a number of defenses, some of which were not seriously pressed and will not be discussed here. However, the following defenses bring the basic issues into focus.

1. Factually, defendants dispute the bona fides of plaintiff's claim that he acted as broker in the instant case, contending that Jacoby, not Stahl, was on its mailing list at the time in question, and that Stahl, in effect, acted in a capacity other than as Jacoby's broker.

2. Defendants contend further, that even if the bona fide nature of plaintiff's role were not in dispute, plaintiff is estopped from bringing suit on several grounds, namely:

(a) The offer to pay a commission, as per the above quoted paragraph 10, was to "any authorized broker or attorney," and plaintiff, not being authorized to act as a broker in New Jersey, may not recover a commission.[1]

(b) The practice of a real estate broker in New Jersey is defined in N.J.R.S. 45:15-3, N.J.S.A.,[2] which statute prohibits the bringing of a suit in a state court for the recovery of compensation for services rendered by one not a duly licensed broker at the time the alleged cause of action arose. And since plaintiff's suit is in a federal court in New Jersey only by virtue of diversity of

---

1. N.J.R.S. 45:15-1, N.J.S.A.

"No person shall engage either directly or indirectly in the business of a real estate broker or salesman, temporarily or otherwise, and no person shall advertise or represent himself as being authorized to act as a real estate broker or salesman, or to engage in any of the activities described in section 45:15-3 of the Revised Statutes, without being licensed so to do as hereinafter provided."

N.J.R.S. 45:15-2, N.J.S.A.

"Any single act, transaction or sale shall constitute engaging in business within the meaning of this article."

2. N.J.R.S. 45:15-3, N.J.S.A.

"A real estate broker, for the purposes of this article, is defined to be a person, firm or corporation who, for a fee, commission or other valuable consideration, or by reason of a promise or reasonable expectation thereof, lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of real estate or an interest therein, or collects or offers or attempts to collect rent for the use of real estate or solicits for prospective purchasers or assists or directs in the procuring of prospects or the negotiation or closing of any transaction which does or is contemplated to result in the sale, exchange, leasing, renting or auctioning of any real estate or negotiates, or offers or attempts or agrees to negotiate a loan secured or to be secured by mortgage or other encumbrance upon or transfer of any real estate for others, or any person who, for pecuniary gain or expectation of pecuniary gain conducts a public or private competitive sale of lands or any interest in lands. In the sale of lots pursuant to the provisions of this article, the term 'real estate broker' shall also include any person, partnership, association or corporation employed by or on behalf of the owner or owners of lots or other parcels of real estate, at a stated salary, or upon a commission, or upon a salary and commission, or otherwise, to sell such real estate, or any parts thereof, in lots or other parcels, and who shall sell or exchange, or offer or attempt or agree to negotiate the sale or exchange, of any such lot or parcel of real estate.

"A real estate salesman, for the purposes of this article, is defined to be any person who, for compensation, valuable consideration or commission, or other thing of value, or by reason of a promise or reasonable expectation thereof, is employed by and operates under the supervision of a licensed real estate broker to sell or offer to sell, buy or offer to buy or negotiate the purchase, sale or exchange of real estate, or offers or attempts to negotiate a loan secured or to be secured by a mortgage or other encumbrance upon or transfer of real estate, or to lease or rent, or offer to lease or rent any real estate for others, or to collect rents for the use of real estate, or to solicit for prospective purchasers or lessees of real estate, or who is employed by a licensed real estate broker to sell or offer to sell lots or other parcels of real estate, at a stated salary, or upon a commission, or upon a salary and commission, or otherwise to sell real estate, or any parts thereof, in lots or other parcels.

"No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker at the time the alleged cause of action arose."

citizenship, this court, applying New Jersey law, should likewise bar its doors to plaintiff.

Plaintiff's position that his suit and recovery would not be repugnant to New Jersey's public policy and that this court cannot properly bar his suit, is based on the following four grounds:

1. The offer to "any authorized broker," coupled with mailing to New York addressees and advertising in New York newspapers, could only mean that it was intended that *any* licensed broker would be entitled to a commission were it earned.

2. Since interstate commerce is involved, the jurisdiction of this court cannot be ousted.

3. The statutory requirements that brokers be licensed must be read in conjunction with the following statement in the Emergency Veterans Housing Act, N.J.R.S. 55:14G–1, N.J.S.A.:

> "* * * this emergency requires the temporary suspension of various normal restrictions, prohibitions, limitations, and procedures, in order that immediate relief from this condition may be provided; * * *"

4. Since New Jersey allows its licensed brokers to engage in promotional sales[3] in New Jersey of lands outside New Jersey, there can be no strong objection to a New York licensed broker engaging in the sale of New Jersey land, where the brokerage contract was entered into in New York. Moreover, the fact that New Jersey permits the licensing of non-resident real estate brokers[4] without examination indicates the very opposite of a public policy of restriction of non-resident brokers.

A reasonable interpretation of the words "any authorized broker" describing the qualifications for earning commission, as used, in the invitation to bid, must mean that it was the intent of the invitors to offer the commission to any *New Jersey* authorized broker. This is reinforced by the fact that the above phrase "any authorized broker" is followed by "or attorney." New Jersey attorneys are permitted to engage in real estate transactions without being licensed brokers by virtue of N.J.R.S. 45:-15–4, N.J.S.A.[5] It is too unrealistic to expect that New Jersey was willing to include non New Jersey attorneys in this category.

---

3. N.J.R.S. 45:15–16.1, N.J.S.A.
   "Any broker who proposes to engage in sales of a promotional nature in this State of property located outside of this State, must submit to the commission before doing so, full particulars regarding such property and the proposed terms of sale, and said broker and his salesmen must comply with such rules, regulations, restrictions and conditions pertaining thereto as the commission in its discretion may impose. The commission shall investigate all such matters, and all expenses incurred by the commission in investigating such property and the proposed sale thereof in this State, shall be borne by the broker. No broker or salesman shall in any manner refer to the New Jersey Real Estate Commission, or to any officer or employee thereof, in selling, offering for sale, or advertising, or otherwise promoting the sale, mortgage or lease of any such property, nor make any representation whatsoever that such property has been inspected or approved or otherwise passed upon by said commission or by any State official, department or employee."

4. N.J.R.S. 45:15–20, N.J.S.A.
   "A nonresident may become a real estate broker or real estate salesman by conforming to all of the provisions of this article. * * *"

5. N.J.R.S. 45:15–4, N.J.S.A.
   "The provisions of this article shall not apply to any person, firm, partnership, association or corporation who, as a bona fide owner or lessor, shall perform any of the aforesaid acts with reference to property owned by him, nor shall they apply to or be construed to include attorneys at law, receivers, trustees in bankruptcy, executors, administrators or persons selling real estate under the order of any court or the terms of a deed of trust, state banks, federal banks, savings banks and trust companies located within the state, or to insurance companies incorporated under the insurance laws of this state.

The incidence of burden on interstate commerce resulting from licensing of real estate brokers is patently negligible, and in the absence of contrary action by Congress, the reasonable exercise of state police power raises no federal question. See Robertson v. People of State of California, 1946, 328 U.S. 440, 66 S.Ct. 1160, 90 L.Ed. 1366.

Plaintiff's contention that the quoted provision of the Emergency Veterans Housing Act suspending "various normal restrictions, prohibitions, limitations and procedures" logically included the suspension of the real estate licensing statutes finds little merit in the circumstances of this case. Whatever application this general power might have had during the period of housing emergency to supersede or suspend normally operative requirements, such powers could hardly be said to apply to the *liquidation* of the emergency housing program.

Plaintiff submits the case of State v. Gallaher, Ch.Div.1957, 44 N.J.Super. 59, 129 A.2d 593, as standing for the proposition that "Federal Courts are not 'the courts of this State'." However, that decision has no application here, and is taken out of its proper context in an opinion concerned with the effect of a state escheat statute on moneys deposited in the registry of a federal court.

The jurisdiction of the federal court was discussed in Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524. It was a diversity of citizenship suit brought by a foreign corporation to recover a broker's commission for the sale of real estate. The United States District Court in the forum state barred the suit because plaintiff had failed to conform to a local statute requiring foreign corporations to file a written power of attorney designating an agent on whom process could be served. The statute further provided that failure to comply would bar such corporation from bringing or maintaining any suit in its courts. The Court of Appeals of the 5th Circuit reversed, holding that unenforceability in the state courts "did not close the doors of the federal court sitting in that State." (337 U.S. at page 536, 69 S.Ct. at page 1236). However, the United States Supreme Court stated that "the policy of Erie v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188], precluded maintenance in the federal court in diversity cases of suits to which the State had closed its courts." (337 U.S. at page 537, 69 S.Ct. at page 1237).

A case strongly parallel to the one at bar is that of Reed v. Kelly, 7 Cir., 1949, 177 F.2d 473. There, the plaintiff was a resident of and a duly licensed real estate broker in Illinois. He sued the defendant, a resident of Wisconsin, to recover a commission for procuring a purchaser for defendant's Wisconsin property. Plaintiff was not licensed in Wisconsin, the statutes of which, as in New Jersey, required that one acting as a real estate broker, temporarily or otherwise, should be licensed in Wisconsin before transacting any real estate business there. Further, a plaintiff could not bring or maintain an action in the Wisconsin courts for the recovery of a commission without alleging and proving himself to be a real estate broker licensed by Wisconsin.

The Court made the following cogent statement:

"It is true, as a general rule, that the lex loci governs as to the validity of contracts, but this rule is subordinate to and is qualified by the doctrine that neither by comity nor by the will of contracting parties can the public policy of a State be set at naught. The Kensington, 183 U.S. 263, 269, 22 S.Ct. 102, 46 L.Ed. 190. A State may refuse to enforce a contract which provides for doing within it an act prohibited by its laws. Bothwell v. Buckbee Mears Co., 275 U.S. 274, 278, 48 S.Ct. 124, 72 L.Ed. 277. And in an action to enforce a remedy, the law of the forum applies and not the law of the place of the making or performance of the contract. Scudder v. Union National Bank, 91 U.S. 406, 413, 23

L.Ed. 245. That is to say, a citizen of one State cannot use the courts of a sister State to prosecute his cause of action in a manner contrary to the laws of the forum, Walton School of Commerce v. Stroud, 248 Mich. 85, 226 N.W. 883, 885; Mt. Ida School for Girls v. Rood, 253 Mich. 482, 235 N.W. 227, 74 A.L.R. 1325; and Transit Bus Sales v. Kalamazoo Coaches, 6 Cir., 145 F.2d 804, *and if it appears that the courts of Wisconsin would refuse to enforce plaintiff's contract because he was not a licensed real estate broker in Wisconsin, the federal courts must do likewise.* Griffin v. McCoach, 313 U.S. 498, 507, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462." (177 F.2d at page 475) (Emphasis supplied.)

Thus the nub of the legal question herein involved is reduced to the issue of whether New Jersey courts can be closed to plaintiff as a matter of reasonable exercise of public policy.

The last paragraph of N.J.R.S. 45:15–3, N.J.S.A. was added to the statute in a 1953 amendment, and is as follows:

> "No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article *without alleging and proving that he was a duly licensed real estate broker at the time the alleged cause of action arose."* (Emphasis supplied.)

The above quoted language is clear and unequivocal. It leaves little room to question the legislative intent to make licensing a condition precedent to the institution of suit for the recovery of a brokerage commission.

■ Plaintiff's position, however, in effect contends that this statutory language is not such an expression of public policy as would foreclose him from suing for his claimed brokerage commission in the courts of New Jersey. I cannot agree.

Although research has failed to reveal any record of a preambulary or accompanying statement of legislative intent made at the time of the introduction of the legislation, the decisional law of New Jersey is uniformly consistent in holding that the Act is both regulatory and an expression of public policy.

As early as 1925, the New Jersey Supreme Court in Wensley v. Godby, 101 N.J.L. 325, 128 A. 590, held that the original Act of 1921 (since amended several times) was a regulatory and not merely a revenue statute, saying:

> "Our own Act of 1921 * * * seems to contemplate a regulation of the business presumably under the police power of the state. Its title is 'An act to define, regulate and license real estate brokers,' etc., and in its first section makes it 'unlawful for any person * * * to engage, either directly or indirectly, in the business of a real estate broker * * * without first obtaining a license' under the act."

The above language was quoted with approval in Kenney v. Paterson Milk & Cream Co., E. & A. 1933, 110 N.J.L. 141, 144, 150, 164 A. 274, 88 A.L.R. 1416, wherein was first applied a 1931 amendment (N.J.R.S. 45:15–2, N.J.S.A.) [6] making even a single act, transaction, or sale by an unlicensed broker unlawful and prohibited by statute.

The New Jersey Supreme Court, in Corson v. Keane, 1950, 4 N.J. 221, 227, 72 A.2d 314, 317, reaffirmed that the "New Jersey act has been held to be regulatory and not merely for the purpose of raising revenue," and then said the following:

> "Our present licensing act has its source in L.1921, c. 141, sec. 1, p. 370, and it was first amended by L. 1925, c. 243. In 1925, our former Supreme Court decided that the language of the act as then existing did

6. See Footnote (1).

not contemplate that the execution of a single transaction was to be considered as being engaged in business within the meaning of the statute. Wensley v. Godby, 101 N.J.L. 325, 128 A. 590 (Sup.Ct.1925). In 1931, the legislature, by L.1931, c. 286, sec. 1, p. 720, again amended the statute by adding the words 'temporarily or otherwise' after the words to 'engage either directly or indirectly in the business of a real estate broker or salesman' in what is presently known as R.S. 45:15–1, N.J.S.A., and also added what is now known as R.S. 45:15–2, N.J. S.A., as follows: 'Any single act, transaction or sale shall constitute engaging in business within the meaning of this article.' *The legislature by such action clearly manifested an intention to close avenues to the unlicensed participation in the business of real estate brokerage.*" (Emphasis supplied.)

In Solomon v. Goldberg, App.Div.1950, 11 N.J.Super. 69, 75, 78 A.2d 118, 121, the court said:

"The public policy of this State is not to lend unlicensed brokers the aid of the courts to enforce their brokerage agreements."

See also Palkoski v. Garcia, App.Div. 1954, 32 N.J.Super. 343, 347, 108 A.2d 271.

In Yoerg v. Northern New Jersey Mtg. Associates, App.Div.1957, 44 N.J.Super. 286, 292, 130 A.2d 392, suit was brought in New Jersey by a New York resident, not licensed in New Jersey, to recover a brokerage fee for negotiating mortgages in New York on New York real estate. The trial court had found for plaintiff, and on appeal, defendant urged that recovery should have been denied because plaintiff had not alleged and proved that he was a licensed New Jersey broker. The court held that only if there had been no New Jersey incident in the transaction, could plaintiff recover without conforming to the New Jersey licensing statute. The case was remanded to re-

solve a previously undetermined question of whether the contract had been executed in New York or in New Jersey, all other aspects of the transaction having been determined to have taken place in New York.

The court stated at pages 292, 293 of 44 N.J.Super., 130 A.2d at page 395:

"* * * so far as pleading is concerned, *if there were a New Jersey implicating incident* in the transaction it would have been plaintiff's affirmative obligation under the statute, as already seen from the statutory language, to plead, as well as to prove, that he was licensed at the time the cause of action arose. * * * It is clear, however, that the statutory requirements, even before the 1953 amendment concerning pleading and proof, were indicative of a *strong public policy* of this State *to withhold from brokers unlicensed* at the time of the doing of any of the acts prohibited to unlicensed persons *the aid of the courts to enforce payment of compensation for brokerage services rendered in connection therewith.* * * * We do not think the 1953 amendment was intended to lessen the impact of the statute upon unlicensed brokers." (Emphasis supplied.)

Moreover, in the context of the instant case, it matters little whether the brokerage contract was entered into in New York, as plaintiff contends, or in New Jersey, because New Jersey "implicating incidents" are unquestionably involved. This is clearly evidenced by a stipulation of facts signed by both parties to this suit, which discloses among other things the following:

"On March 15, 1955, plaintiff, Maurice Stahl, and Mr. Sydney Jacoby attended a formal bid submission at the Municipal Building in Teaneck, New Jersey."

*   *   *   *   *   *

"Plaintiff has stated under oath that he took prospective purchasers to the situs of the property in Tea-

neck, New Jersey, in order to secure a bidder."

\* \* \* \* \* \*

"On at least one occasion, plaintiff took Mr. Sydney Jacoby to New Jersey to view the Teaneck property."

\* \* \* \* \* \*

"After approval of the bid by defendants, plaintiff participated in attempts to secure mortgage financing for the grantee in the State of New Jersey, which financing was ultimately secured from the Howard Savings Institution at Newark, New Jersey."

■■ It is evident, therefore, from the legislative language and its construction by the courts of New Jersey, that the Act is a strong expression of public policy. It comes well within a reasonable exercise of the police power of the State to protect the public from fraud, misrepresentation, incompetence and sharp practice. The closing of the courts of the State to suits by brokers not licensed in New Jersey is an implementation of that policy. Therefore, since New Jersey courts can properly be closed to suits of this nature, a federal court sitting as a state court in a diversity action can do no differently. Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

Aside from the legal question which has been determined by the foregoing, an examination of the plaintiff's claim for the brokerage fee discloses it to be without merit because he has failed to establish by a preponderance of the evidence that he acted as a bona fide broker in this case.

There is considerable doubt surrounding the circumstances under which plaintiff allegedly assumed the role of broker. He insisted he entered into negotiations as broker following his receipt of a letter addressed to him and sent by the Public Housing Development Authority of the State of New Jersey.

A witness for the defendants testified that while the records of the Public Housing and Development Authority disclosed that plaintiff's name was on an *addressograph plate* for the mailing of advertisements for the sale of *temporary* veterans' housing, the information concerning sales of *permanent* veterans' housing, as is the property in this case, was mailed to addressees from *cards* containing the names of potentially interested persons. In this connection it must be noted that although plaintiff produced many envelopes addressed to him by the defendant Administrator, he did not produce the one concerning the Teaneck property which allegedly induced him to solicit Jacoby's interest.

On the other hand, it was established that Jacoby's name was on defendant's mailing list prior to the case in question, and in fact, that he had made inquiry of defendant concerning at least one other property prior thereto.

Many of the circumstances brought out in the evidence such as plaintiff's cotenancy in the same office with Jacoby; the latter's previous interest in the purchase of permanent veterans' housing under the jurisdiction of the Public Housing and Development Authority in New Jersey; the extent of plaintiff's activities ranging from seeking mortgage financing to participation in the organizing of the Hill Street Realty Company may be consistent with the relationship of broker when viewed as individual elements.

However, plaintiff's testimony concerning the origin and extent of his own investment and stockholder interest in the Hill Street Realty Company was left in a vague and indeterminable state. Records ordinarily producable were not brought forth, although opportunity to do so was furnished.

When all of the circumstances are brought into focus in totality it is more reasonable to infer that plaintiff's role was not that of a broker but of a participant in a joint venture.

■ I conclude, therefore, that plaintiff has failed to carry his burden of establishing, by a preponderance of the evidence, that he acted as a broker in the

instant case, and his claim for $25,007.50 fee must be denied.

The above shall constitute findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.

Defendants should submit an order in conformity herewith, consented to as to form by plaintiff, or move to settle an order on the next motion day.