50 N.J. Super. 342 (1958)
142 A.2d 247
J.J. TANENBAUM, INDIVIDUALLY AND TRADING AS PROPERTY ANALYSIS ASSOCIATES, AND A.P. LEVIN, INC., A NEW JERSEY CORPORATION, PLAINTIFFS-APPELLANTS,
v.
SYLVAN BUILDERS, INC., FRANK JOY, SR., AND FRANK JOY, JR., DEFENDANTS-RESPONDENTS, AND BENJAMIN SCHER AND WARREN MACK, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1958.
Decided June 2, 1958.
*345 Before Judges GOLDMANN, FREUND and CONFORD.
*346 Mr. Sidney M. Schreiber argued the cause for appellants (Messrs. Schreiber, Lancaster & Demos, attorneys).
Mr. Walter T. Wittman argued the cause for respondents (Mr. Michael J. Ferrara, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiffs, J.J. Tanenbaum, trading as Property Analysis Associates, a real estate broker licensed in New York but not in New Jersey, and A.P. Levin, Inc., a licensed New Jersey broker, sued defendants Sylvan Builders, Inc., Frank Joy, Sr., and Frank Joy, Jr., to recover brokerage commissions of which they were allegedly deprived by reason of defendants' fraud, deceit and tortious interference with plaintiffs' rights. Sylvan Builders is the Joy family corporation. The Law Division granted defendants' motion for summary judgment, and plaintiffs appeal. There was a third-party action against Benjamin Scher and Warren Mack, but it is not involved in the present appeal. (For an earlier action involving a suit for real estate brokerage commissions by Mack against the owner of the same property, see Mack v. Revicki, 47 N.J. Super. 185 (App. Div. 1957)).

I.
Revicki was the owner of about 29 acres of land in New Jersey. Tanenbaum, the New York broker, was successful in interesting Scher, a resident of Long Island, New York, in buying the property. Scher entered into a contract of purchase with Revicki on May 5, 1955, the agreement being executed at the office of Revicki's attorney in New Jersey and $20,000 deposited in escrow with the attorney, the balance to be paid by purchase money note and mortgage. The contract was subject to the existing tenancy of one Zilenske; however, by separate letter (post) of the same date the sale was made contingent upon Zilenske's vacating the premises within one week. Attached to the contract was *347 a rider which provided that the contract was expressly conditioned, among other things, upon approval by the local planning board of a subdivision map to be prepared by the purchaser and to contain a minimum of 100 building lots of 7,500-square-foot area each, on or before August 31, 1955 or such further extension as might be consented to by the seller in writing; and a maximum cost of $25,000 for drainage and fill. In the event of the breach of any of the conditions of the agreement, Scher was given the option of giving Revicki written notice of the abandonment of the contract, whereupon Scher was to be entitled to the return of his deposit. The deed was to pass on or before August 31, 1955. The rider makes specific reference to a separate agreement between Revicki and Tanenbaum providing for a brokerage commission.
The complaint is in two counts. The first alleges that Tanenbaum obtained Scher as a buyer and Revicki agreed to pay him a real estate commission; that Scher subsequently engaged "plaintiffs"  i.e., Tanenbaum and Levin  to resell the property and agreed to pay them a commission; that plaintiffs obtained defendants as prospective purchasers and entered into negotiations for the sale of the property and the assignment of Scher's purchase contract; that defendants "surreptitiously and with the intent of defrauding the plaintiffs of their commission and intending that the said Benjamin Scher should not pay the commission due the plaintiffs," entered into an arrangement with Revicki and Scher whereby defendants agreed and did pay to Scher $6,000, the Scher-Revicki contract was rescinded, and defendants entered into a new contract of purchase with Revicki; further, that defendants falsely represented that plaintiffs were not the brokers, that they did not know plaintiffs and no commissions were due them, and that as a result plaintiff Tanenbaum did not receive his agreed commission of $13.338 in connection with the sale to Scher. Tanenbaum demanded judgment in that amount.
The second count repeats the allegations of the first count, and that "plaintiffs were unlawfully deprived of their agreed *348 commission of $11,000 for sale of the property to the defendants," and demands judgment in that sum.
The defense set up in the answer was the existence of a remedy at law against Revicki and/or Scher for any commissions that might be due, and accord and satisfaction with Revicki and/or Scher, waiver of commission, and estoppel. In the pretrial order the defendants further contended that Tanenbaum, not being a licensed New Jersey real estate broker, was not entitled to a commission, and also raised the additional defense of the statute of frauds.
The complaint does not indicate whether the second count, insofar as it states a demand on behalf of Tananbaum, is intended as an additional claim or as an alternative claim to that made in the first count. However, at the oral argument Tanenbaum claimed he was entitled to recover both commissions.
Defendants' motion for summary judgment was supported by two affidavits. The first, by Frank Joy, Sr., alleged Mack was the sole broker to negotiate the sale to Sylvan Builders, Inc., and plaintiffs were in no way connected with the purchase. The second, by Scher's New Jersey attorney, Fasolo, states that the contract between Revicki and Scher was to be held in escrow "until satisfactory arrangements were made and a separate agreement was signed by" Revicki and his tenant regarding the date the tenant would vacate the premises, and that the escrow conditions were not met and the contract not consummated. He also states that the contract contained certain conditions precedent which were impossible of fulfillment, one being that the cost for drainage and fill would not exceed $25,000, and that the cost, according to the estimates of certain engineers, would be far in excess of that amount. Fasolo's affidavit further alleges that when his client, Scher, was advised of the drainage and fill cost, he refused to continue with the contract and demanded that the transaction be terminated; that he accordingly demanded the return of the $20,000 escrow deposit from the seller's attorney, and the matter *349 was finally adjusted, even after the seller had made time of the essence, and the $20,000 deposit returned to Scher.
In opposition to the motion for summary judgment, plaintiffs presented the affidavit of Alfred P. Levin, president of A.P. Levin, Inc. This affidavit states that A.P. Levin, Inc., is a licensed New Jersey real estate broker; that Tanenbaum had requested Levin to assist in finding a purchaser for the land Revicki had sold to Scher, Scher being interested in disposing of his contract; that as a result of a telephone call by Frank Joy, Sr., late in March 1956 advising that he was interested in buying land for development purposes, Levin had his salesman, Groll, arrange for an appointment; that Groll showed Joy various tracts, including the Revicki property; and that Joy came to his office on April 12, 1956, at which time they discussed the Revicki property and Joy offered $2,200 a building lot. As a result, Tanenbaum, Joy and Groll met with Levin in his office four days later. Levin states that Tanenbaum advised Joy that the deal would involve an assignment of a contract of purchase. Among other matters discussed was the amount of the mortgage the seller would take, engineering matters (Tanenbaum lent Joy an engineering report which Scher had had made), and certain municipal requirements, and Joy then agreed to a price of $2,450 a lot if everything else proved satisfactory. Levin alleges that Joy thereafter made an appointment for May 2, 1956, which he never kept. Shortly thereafter Levin learned that the property had been sold to defendants.
In addition to the pleadings and affidavits the trial judge also had before him the depositions of Fasolo and Joy. Fasolo testified to the execution of the May 5, 1955 contract between Revicki and Scher, with its escrow arrangement, and produced a letter written by Revicki's attorney on that date, addressed to him, stating that the agreement was to be held in escrow pending delivery of the tenant's consent to vacate, and in the event that such agreement was not obtained from the tenant within one week, the $20,000 deposit and the agreement would be returned upon the request *350 of either the seller or the buyer. On July 7, and again on July 20, 1955 Fasolo wrote Revicki's attorney that Scher did not desire to consummate the contract because it was impossible to obtain 100 building lots out of the premises, the drainage and fill would cost about $60,000, and the tenancy problem had not been settled. Fasolo requested the return of the $20,000 deposited in escrow. Apparently nothing further was done about this request. On February 1, 1956 Revicki's attorney wrote Fasolo that the tenant had vacated, and on April 30, 1956 he wrote Scher making time of the essence and fixing May 9, 1956 as the closing date. Fasolo testified that this extension of the time for closing had mutually been agreed to. The only conclusion that can be drawn from the Fasolo deposition is that the May 5, 1955 contract between Revicki and Scher was still very much alive when the sale to Sylvan Builders was in the making.
In his deposition Frank Joy, Sr. stated that in the first part of May 1956 he had received a call from Mr. Groll of the Levin firm that he had the owner of the Revicki farm in his office, and he asked if Joy would not come down and discuss the purchase of the tract. Joy said that other brokers had spoken to him of the Revicki farm, but he nonetheless went to the Levin office and was introduced to Tanenbaum who, he soon discovered, was not the owner but a New York broker. He said they had a "casual conversation" regarding the property, but that he was not interested because they were asking too much money for it. He denied that Groll had ever spoken to him about the property before that time, although he admitted that Groll had on a number of occasions prior thereto shown him other properties. Other brokers had tried to interest him in the Revicki tract; he mentioned two: one had discussed the property over the phone prior to Joy's meeting with Tanenbaum, and the other was Mack, who spoke to him of it on a date following the Tanenbaum conference. Joy denied he had discussed with Tanenbaum the price he was willing to pay for the Revicki tract, or mortgage arrangements. He admitted asking Tanenbaum about fill and said that Tanenbaum had insisted *351 that he take away with him a copy of the engineering report covering the tract. He testified that this was the only meeting he had ever had at the Levin office, and soon after Mack spoke to him about the Revicki farm. Joy then talked to his attorney, Ferrara, and told him "about my meetings [sic] with Mr. Tanenbaum and Mr. Levin and that I spoke to Warren Mack about purchasing the land," and he asked Ferrara "how I would go about the procedures."
The next thing that happened was a meeting at the office of a Mr. Reich, Scher's New York attorney, at which Joy, his attorney and Mack were present. Reich was not informed that another broker might possibly be involved; Joy in his deposition insisted that Mack was his broker because he was the one who had submitted and shown him the Revicki property. He testified Reich told him that if he was interested in the property he would have to buy from Revicki. There followed a meeting at the office of Revicki's attorney in New Jersey at which Revicki, Scher's attorneys Fasolo and Reich, Mack and Joy's attorney were present. Joy agreed to pay $7,000 an acre for Revicki's land, and he also gave Reich his check of $6,250 in payment of attorney's and engineering fees connected with the preliminary approval of the Revicki subdivision. This check obviously compensated Scher for work already done. An agreement was then entered into for the purchase by Sylvan Builders from Revicki of his entire tract, conditioned upon the purchaser receiving final approval of the subdivision from the municipal and county authorities, the planning board already having given its preliminary approval to the layout. At the same time there was executed a commission agreement reciting that Mack had negotiated the sale from Revicki to Sylvan and that Revicki recognized him as the broker who had consummated the deal and therefore entitled to brokerage commissions at 6 1/2% of the total purchase price. At the bottom of this agreement there appears the following:
"Please be advised that Warren Mack, of New Milford, is the sole real estate broker to negotiate the sale and purchase of the `Revicki Farm' to the undersigned and that J.J. Tanenbaum or *352 Property Analysis Associates were in no way connected with this purchase by us.
 Sylvan Builders, Inc.
 /s/ Frank Joy, Sr."
The trial judge granted defendants' motion for summary judgment. He concluded that the first count of the complaint should be stricken because there was no showing of how Tanenbaum's contract with Revicki for commissions had been breached by defendants' alleged false representations; there was "no causal relation" between the two. He also held that Tanenbaum was not a licensed New Jersey broker, N.J.S.A. 45:15-1, 54:15-3, and he was therefore not entitled to bring the action. As to the second count, he concluded it should be dismissed because it was indefinite, citing R.R. 4:9-1, and that Tanenbaum could not sue on this count because he was not a licensed New Jersey real estate broker. It having been agreed that Scher did not directly engage A.P. Levin, Inc., and that there was no written contract between them, the trial judge held that Levin could not recover.

II.
We deal, first, with Tanenbaum's claim under the first count that he was deprived of his $13,338 commission on the sale of the Revicki property to Scher by reason of defendants' fraud, deceit and interference with the business relationship. Defendants claim that the existence of the Revicki-Scher contract is a question of law, and since the contract was made and delivered in escrow under conditions which were not fulfilled  the tenant not vacating the premises prior to a specified date; fill and drainage costs for the development exceeding $25,000, etc.  the entire agreement is a nullity. There was no legally enforceable contract and therefore there could be no claim of interference by defendants therewith.
True, there had been a demand made on Revicki's attorney by Fasolo, Scher's New Jersey attorney, for the *353 return of the $20,000 held in escrow because of the nonfulfillment of the conditions, but we are persuaded from our reading of the depositions that the contract continued viable. It appears that as late as the Spring of 1956, Revicki's attorney had written Scher making time of the essence and fixing May 1, 1956 as the date for closing. Fasolo then discussed the matter with the seller's attorney and it was agreed that the time would be extended to May 9, 1956, and this was confirmed by letter to Scher under date of April 30, 1956.
The strength of defendants' case lies in another direction  the application of the statutory provisions relating to real estate brokers and salesmen, R.S. 45:15-1 et seq., as amended. N.J.S.A. 45:15-1 provides that
"No person shall engage either directly or indirectly in the business of a real estate broker or salesman, temporarily or otherwise, and no person shall advertise or represent himself as being authorized to act as a real estate broker or salesman, or to engage in any of the activities described in section 45:15-3 of the Revised Statutes, without being licensed so to do as hereinafter provided."
N.J.S.A. 45:15-3, after defining "real estate broker" and "real estate salesman," declares that:
"No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker at the time the alleged cause of action arose."
The quoted section of N.J.S.A. 45:15-3 was imported into the law by L. 1953, c. 229, § 2. As early as 1933 the former Court of Errors and Appeals held in Kenney v. Paterson Milk and Cream Co., 110 N.J.L. 141, that plaintiffs not licensed as a real estate broker, could not recover under a written agreement for commissions after obtaining a buyer of the defendant's lands, buildings, equipment, assets and good will even though all the property was not realty, by reason of the provisions of L. 1921, c. 141, requiring real *354 estate brokers to be licensed. The court held the act to be regulatory and an exercise of the police power of the State (citing the 1925 Supreme Court decision in Wensley v. Godby, 101 N.J.L. 325, referred to in Waring v. Jobs, 104 N.J.L. 158 (E. & A. 1927)), and that even a single act or transaction was unlawful so as to prevent recovery. And see Donadt v. Eberle, 20 N.J. Misc. 349, 27 A.2d 612 (Dist. Ct. 1942); Bierman v. Barthelmeus, 24 N.J. Misc. 35, 45 A.2d 820 (Dist. Ct. 1946); Corson v. Keane, 4 N.J. 221 (1950); Solomon v. Goldberg, 11 N.J. Super. 69 (App. Div. 1950); Cohen v. Scola, 13 N.J. Super. 472 (App. Div. 1951); George H. Weinrott & Co. v. Burlington Housing Corp., 22 N.J. Super. 91 (Ch. Div. 1952); Palkoski v. Garcia, 32 N.J. Super. 343 (App. Div. 1954), affirmed 19 N.J. 175 (1955); cf. Buschbaum v. Barron, 1 N.J. Super. 4 (App. Div. 1948). The amendment of 1953 (N.J.S.A. 45:15-3, last paragraph) merely crystallized a legal principle already firmly engrained in our decisions under the Real Estate Brokers Act of 1921, as amended, N.J.S.A. 45:15-1 et seq.
The services Tanenbaum rendered in bringing about the sale of Revicki's land to Scher were such that a real estate broker's license was, under the public policy of New Jersey, a condition precedent to the maintenance by him of an action for his compensation. Clearly, our public policy is not to lend unlicensed brokers the aid of our courts to enforce their brokerage agreements. Indeed, N.J.S.A. 45:15-23 provides for a schedule of penalties to be recovered against any person who violates any of the provisions of the Real Estate Brokers Act at the suit of the New Jersey Real Estate Commission in summary proceedings prosecuted under the Penalty Enforcement Act, N.J.S. 2A:58-1 et seq. It would have been a simple matter for Tanenbaum, as a real estate broker licensed in New York State, to have obtained a license in New Jersey under the reciprocal privileges provision of N.J.S.A. 45:15-20. Having failed to do so, our courts would be closed to any action for the collection of his brokerage commission.
*355 Tanenbaum argues that his claim under the first count is not based on contract, but on tort; he does not sue for the brokerage commission but for defendants' unjustifiable interference with his right to pursue his lawful business and to reap the earnings of his industry, citing Louis Kamm, Inc., v. Flink, 113 N.J.L. 582 (E. & A. 1934). That is so. By analogy to the cases which hold that the statute of frauds is not available to strangers who tortiously interfere with contractual or advantageous relations (George H. Beckmann, Inc., v. Charles H. Reid & Sons, Inc., 44 N.J. Super. 159 (App. Div. 1957); see Louis Schlesinger Co. v. Wilson, 22 N.J. 576, 585-586 (1956), but cf. C.B. Snyder Realty Co. v. National Newark and Essex Banking Co., 14 N.J. 146, 164 (1953)), Tanenbaum contends that he is entitled to maintain his suit against the Joys and their corporation, Sylvan Builders. The analogy to the statute of frauds is not apt, for that statute does not make the transaction illegal for lack of a writing but merely denies the aid of the court in enforcing it. The licensing statute, however, represents the public policy of the State, and is not merely a regulation of private property law. The courts will prohibit its circumvention by denying relief in any case where the effect, direct or indirect, of allowing an action would be to recognize a transaction consummated in violation of the statutory provision. Thus, failure to raise the defense of the statute of frauds in an action by a real estate broker for tortious interference with his oral contractual relationship with the vendor, resulting in loss of commission on the sale, has been held to amount to a waiver of any defense based directly or indirectly on the statute or its policy. Sustick v. Slatina, 48 N.J. Super. 134, 141 (App. Div. 1957). On the other hand, in the case of an action to enforce a commission agreement where the real estate broker is unlicensed, the defense of no license will as a matter of public policy be permitted to be raised on appeal notwithstanding failure to assert it in the answer. See Yoerg v. Northern New Jersey Mortgage Associates, 44 N.J. Super. 286, 292-293 (App. Div. 1957).
*356 The entire tenor and thrust of the Real Estate Brokers Act is that an unlicensed person may not act as a real estate broker or salesman in this State unless he happens to belong to the class of persons specifically excepted in R.S. 45:15-4  attorneys, receivers, trustees in bankruptcy, executors, administrators or persons selling real estate under court order or deed of trust, banks, etc. To do so is to invite a penalty, N.J.S.A. 45:15-23. We recognize that in some kinds of license situations courts elsewhere have considered public policy as not sufficiently strong to defeat an action brought by the unlicensed person, Annotation, 13 A.L.R.2d 157 (1950); and see Annotation, 86 A.L.R. 640 (1933), dealing with the application and effect of real estate broker licensing statutes upon brokers not licensed in the forum. It is our considered view that the public policy announced by the express language of our act and supported over the years by the decisions of our courts has such strength and reach as to warrant its application in the context of the present situation. We cannot permit so strong a policy to be vitiated by allowing recovery in tort to one who could not recover in contract, even where third parties are involved.
Tanenbaum argues that the illegality of his not being a licensed New Jersey real estate broker was not pleaded as a specific defense. That defense was expressly raised in the pretrial order and was argued on the motion for summary judgment. But even had this not been done, the objection that Tanenbaum was not a licensed broker of this State would, as seen above, be noticed on appeal as a matter of public policy. Solomon v. Goldberg, above, 11 N.J. Super. at pages 74-75; Yoerg v. Northern New Jersey Mortgage Associates, above, 44 N.J. Super. at pages 292-293, where we said that the 1953 amendment was not intended to lessen the impact of the statute upon unlicensed brokers; "[a]s such a point of public policy, then, the objection may be noticed on appeal even though it were regarded as a matter of defense to be raised at the trial and was not so raised."
*357 Our discussion of the controlling force of the licensing statute to one side, there was nothing before the trial court to show how or in what way the consummation of the sale of the property to defendants operated to relieve Revicki of his commission agreement obligation to Tanenbaum. On the facts of the case, the sales agreement between Revicki and Scher was still recognized as in full force in the early part of May 1956, just before Revicki entered into his contract with Sylvan Builders on May 16. For all that appears, Revicki still owes Tanenbaum the commission earned for effectuating the sale. There has been nothing brought to our attention which factually or legally would relieve Revicki of his obligation to pay a commission to Tanenbaum for obtaining Scher as a purchaser. In an attempt to answer this point Tanenbaum, for the first time on the oral argument, stated that his commission agreement with Revicki was contingent on the closing of the contract with Scher. However, nothing is contained in the proofs on the motion in support of this allegation, it was not argued in the brief, and apparently was not asserted before the trial court.

III.
The major stress of plaintiffs' brief seems to be directed toward claimed error in the granting of a summary judgment on the second count of the complaint. That count presents a double aspect, since both Tanenbaum and A.P. Levin, Inc., allege they were unlawfully deprived of their agreed commission of $11,000 for sale of the property to defendants. This claim must necessarily be based upon Scher's having retained them to resell the property.
The affidavit filed by the president of the Levin firm in opposition to the motion for summary judgment states quite clearly that it was Tanenbaum who had requested that he assist him in finding a purchaser for the Revicki farm that had been sold to Scher. This negatives any engagement by Scher of the Levin firm, a duly licensed real estate broker of this State. Levin was, therefore, actually engaged by Tanenbaum and was his agent to effect a resale. Tanenbaum *358 reappears in the subsequent negotiations: he was at the Levin office when, says Levin, Joy and Groll were present. Levin's affidavit goes on to reveal that Tanenbaum and Reich, Scher's New York attorney, came to his office on May 2, 1956, when Joy was supposed to be there.
The brokerage agreement was obviously between Tanenbaum and Scher. Plaintiffs claim that that agreement, oral in character, was one made with a licensed New York broker in New York and therefore valid and enforceable in New Jersey, because the validity of a contract must be determined by the place of its execution. Ordinarily, as was observed in Yoerg v. Northern New Jersey Mortgage Associates, above, 44 N.J. Super. at page 292, the law of the place where a brokerage contract is made determines its validity and enforceability in respect to compliance with brokerage licensing requirements. In that case the property was located in New York and plaintiff, a New York resident not holding a New Jersey real estate broker's license, sued a New Jersey corporation under a written contract for his services in obtaining mortgage financing. The court said that if the brokerage contract were executed in New Jersey the proscription of the licensing act, N.J.S.A. 45:15-3, would apply, but the question to which the court could find no answer and which required a remand was: In what state had the agreement been executed? The stress of the decision was on whether there was a New Jersey "implicating incident" in the transaction, within the prohibitory statutory language. If there was, it would have been plaintiff's affirmative obligation under the statute to plead as well as prove that he was licensed at the time the cause of action arose. The search was for such a New Jersey incident. The court held as it did, not because it considered the place of execution the exclusive determinant, but because that was the only possible material New Jersey incident which could come within the statute, under the facts of that case. Whenever a significant part or material "incident" of a transaction involving an unlicensed broker takes place in New Jersey, the statute applies.
*359 It is interesting to note that had this action been brought in New York, and involved a broker unlicensed there, the property being in New York and the contract executed in New Jersey, the broker would not be permitted to recover. Copellman v. Rabinowitz, 208 Misc. 274, 143 N.Y.S.2d 496 (N.Y. City Ct. 1955); Baird v. Hine, 253 App. Div. 65, 300 N.Y.S. 1171 (App. Div. 1937); but cf. Bitterman v. Schulman, 265 App. Div. 486, 39 N.Y.S.2d 495 (App. Div. 1943). Copellman involved a real estate broker licensed in Massachusetts but not in New York, who negotiated a long-term lease between defendant owners of a parcel of land in Brockton, Massachusetts, and a Boston company. The court observed that the New York statute was in the nature of regulatory legislation and prohibited suit in the courts of that state by an unlicensed broker. The fact that the property was located elsewhere or the contract of brokerage made outside the state was not considered controlling; important conferences had been held in New York between plaintiff and the New York City owners, and this was held sufficient to warrant dismissal of the suit to recover commissions.
Aside from the matter of whether plaintiffs' alleged agreement with Scher had any New Jersey implicating incident, it is clear that a basic element of Tanenbaum's cause of action on the second count is the claim that he and Levin had procured defendants as purchasers of Scher's interest, and it is the tortious frustration of that arrangement which is the essence of the asserted cause of action. But the evidence showed that Tanenbaum personally participated in New Jersey in the conference with Joy at the Levin office, which it is claimed resulted in plaintiffs' procurement of defendants as purchasers of the Scher interest. This activity by Tanenbaum having clearly been a violation of the New Jersey licensing statute, his cause of action under the second count is not maintainable for the same reasons discussed hereinabove as regards the first count.
Nor is the Levin firm in a better position. Passing by the absence of an agreement with Scher which is the basis *360 of Levin's claim that defendants interfered with an advantageous business relationship, the Levin firm may not prevail because it was acting for and under the direction of Tanenbaum. Levin and Tanenbaum make common cause; they jointly sue for the brokerage commission. Obviously, A.P. Levin, Inc. is not proceeding in its own right and, were it permitted to recover, would share the commission with Tanenbaum.
In view of our conclusions, it becomes unnecessary to discuss other points raised by the parties. The judgment is affirmed.

ADDENDUM
Immediately following the filing of this opinion there was brought to our attention the decision of Chief Judge Forman of the United States District Court for the District of New Jersey, in Stahl v. Teaneck Township, 162 F. Supp. 661, in which plaintiff was denied recovery of a broker's commission from the seller. Plaintiff was a licensed New York broker, not licensed in this State at the time he negotiated the sale. He subsequently became a licensed New Jersey broker. The property involved was in Teaneck Township, New Jersey. The court considered the provisions of N.J.S.A. 45:15-1 et seq., particularly section 45:15-3, as well as Kenney v. Paterson Milk and Cream Co., Corson v. Keane, Solomon v. Goldberg, Palkoski v. Garcia and Yoerg v. Northern New Jersey Mortgage Associates, cited in the body of our opinion. The federal court held that "in the context of the instant case, it matters little whether the brokerage contract was entered into in New York, as plaintiff contends, or in New Jersey, because New Jersey `implementing incidents' are unquestionably involved," quoting the language of our decision in Yoerg, 44 N.J. Super. 286, at pages 292-293. Judge Forman concluded that
"It is evident * * * from the legislative language and its construction by the courts of New Jersey, that the act [N.J.S.A. 45:15-1 et seq.] is a strong expression of public policy. It comes *361 well within a reasonable exercise of the police power of the State to protect the public from fraud, misrepresentation, incompetence and sharp practice. The closing of the courts of the State to suits by brokers not licensed in New Jersey is an implementation of that policy. Therefore, since New Jersey courts can properly be closed to suits of this nature, a federal court sitting as a state court in a diversity action can do no differently."