**R. E. PATTERSON, Appellant,**

v.

**SHOFFNER SAND OF OKLAHOMA, INC.,**
**Appellee.**

**No. 46431.**

Court of Appeals of Oklahoma,
Division 2.

May 21, 1974.

Rehearing Denied June 19, 1974.

Certiorari Denied Jan. 7, 1975.

Released for Publication by the Court of
Appeals Jan. 9, 1975.

Robert G. Grove, Oklahoma City, for appellant.

Clyde A. Muchmore, and Robert D. McCutcheon, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellee.

NEPTUNE, Judge.

This litigation is between two sand companies whose operations take sand from adjoining tracts of land. Both tracts belong to the same owner who in 1964 agreed with plaintiff in writing that plaintiff could take sand from an area between the river and a city sewer easement. In 1969 the owner leased to defendant a tract on the opposite side of the sewer easement.

Plaintiff's petition alleges that defendant has been dumping on plaintiff's area of operations an unsaleable residue extracted from the sand known in the industry as "mud balls" and that defendant refused to stop doing so; that plaintiff has been thereby damaged in the amount of $2,000 as the reasonable expense for removing the mud balls. Plaintiff also alleges that by continuing to dump the mud balls on plaintiff's sand pit, defendant acted maliciously and is therefore liable for punitive damages. In addition to damages, plaintiff seeks a permanent injunction prohibiting defendant from dumping mud balls or other residue upon plaintiff's area of operations.

Defendant's amended answer set up three defenses. First, it is asserted that plaintiff has no standing to maintain the action nor could he be injured by the alleged acts of defendant since plaintiff has no excavation permit as required by the ordinances of the city of Oklahoma City. Second, plaintiff's agreement with the landowner shows on its face that it is a bare license to remove sand from the property covered thereby. Since plaintiff is forbidden by guidelines promulgated by the Department of Public Works of Oklahoma City from excavating within 75 feet of a utility easement, plaintiff has no right to conduct excavation operations within 75 feet of the utility easement so plaintiff's license gives him no right to prohibit defendant's alleged activity of placing mud balls on the easement. And finally, defendant asserts that even if any mud balls were placed on the land subject to plaintiff's contract, such was done at the direction of the owner of the land in order to cover the sewer on the utility easement which had been uncovered during plaintiff's excavation.

After plaintiff's deposition was taken, defendant moved for summary judgment. The motion was sustained for the following reasons:

"1. Plaintiff has failed to obtain an excavation permit pursuant to the provi-

sions of the ordinances of Oklahoma City, Oklahoma, more particularly §§ 13–1, et seq. Therefore, plaintiff has no right under the ordinances of the City of Oklahoma City to remove sand from the land, and has not nor could not be injured by the alleged acts of the defendant.

"2. The contract attached to plaintiff's petition is a non-exclusive license, conveying no interest or stake in the land, and giving plaintiff no exclusive privilege to extract sand from the land."

Plaintiff appeals.

Appellant urges two grounds for reversal: (1) the trial court erred in holding appellant was without standing to prosecute a tort action against a wrongdoer on the theory that he did not have a valid excavation permit; and (2) the trial court erred in entering a summary judgment.

In support of his first point—that the lack of a valid permit should not preclude him from seeking a remedy against a wrongdoer—appellant quotes the following from 51 Am.Jur.2d Licenses & Permits § 69 (1970):

"It appears that a person's failure to timely possess a license required for the carrying on of a particular activity will not ordinarily preclude him from maintaining an action in tort for damage related to the activity."

Appellant also quotes from Annot., 13 A. L.R.2d 157 (1950) as stating the rationale of the rule:

" . . . [I]t would be against public policy to prevent a person, because he is doing an illegal act, from maintaining an action for harm done intentionally or negligently by a third person. This is also the rule of the Restatement (§ 889 Restatement of the Law of Torts) . . . . [The law] does not deem it necessary in the interest of the public good to expose such [unlicensed] person to tortious actions of third persons arising out of the unlicensed contract or business without adequate protection."

Of the few cases that have been decided on this point, the one that most closely resembles the case at bar is Mueller v. Burchfield, 359 Mo. 876, 224 S.W.2d 87 (1949). In that case plaintiff was an egg dealer who had failed to secure a business license as was required by statute. Plaintiff purchased a quantity of eggs from defendant seller who represented to the purchaser that the eggs were fresh and marketable. When it turned out the eggs were not as seller had represented them, the purchaser filed a suit based on fraud. One of the defenses was that plaintiff did not have a state license to engage in the business of buying, selling, dealing or trading in eggs as required by statute. But the court found the general rule to be that "a defendant is not permitted in a tort action to say he is not liable because the plaintiff at the time the injury was inflicted was performing an illegal act."

Appellee urges that the finding of the trial court was correct because by failing to secure a permit from the city to excavate sand, appellant has not acquired a "right" which is capable of being infringed by the tortious act of another. Appellee reasons that since appellant does not have a permit to excavate sand he has no "right" to do so under the ordinances of Oklahoma City and therefore has not been damaged by the alleged acts of appellee.

Appellee relies heavily on two New Jersey cases, Tanenbaum v. Sylvan Builders, Inc., 50 N.J.Super. 342, 142 A.2d 247 (1958) and Rosenthal v. Art Metal, Inc., 95 N.J.Super. 8, 229 A.2d 676 (1967). Appellee claims these cases are analogous to the case at bar and that we should follow the rule set down in these cases. Both involve situations where an unlicensed real estate broker is trying to recover for fraudulent interference with the right to a commission. In both cases the defense of the broker being unlicensed was raised and in both cases judgment was denied for just that reason.

These New Jersey cases were decided, however, as an exception to the general rule. The court in *Tanenbaum* recognized

that its decision was not in line with decisions of other courts and the annotation cited above. But the court went on to say:

> "The entire tenor and trust of the Real Estate Brokers Act is that an unlicensed person may not act as a real estate broker . . . in this State . . .. To do so is to invite a penalty . . .. It is our considered view that the public policy announced by the express language of our act and supported over the years by the decisions of our courts has such strength and reach as to warrant its application in the context of the present situation. We cannot permit so strong a policy to be vitiated by allowing recovery in tort to one who could not recover in contract, even where third parties are involved."

The Oklahoma Supreme Court has held that "proof of licensure is a jurisdictional prerequisite to the entry of a judgment for a real estate commission" and must be inquired into and answered on appeal whether raised by a party or not. Cavnar v. Cohlmia, 44 O.B.J. 894 (1973). Whether the Oklahoma Supreme Court would apply the prerequisite of a license to defeat an action based upon an intentional tort in an action claiming loss of a real estate commission is left somewhat uncertain by *Cavnar*, but we think the decision of such issue is beside the point.

The strong public policy considerations involved in both the New Jersey statute and the Oklahoma statute for the governance of real estate licensees, designed as they are to protect the general public from the dealings of unscrupulous or unreliable real estate brokers, are not present in the ordinance involved in the case at bar. The exhibits in the instant case show that the purpose of the ordinance is not for the protection of the general public but to save the municipal government from any losses due to the private excavators leaving their project in a state of disrepair. The device used is the requirement for a bond to assure the repair of utility lines or refilling an excavated area.

■ While this is a reasonable and legitimate aim of the municipality we think that it does not embody such a strong public policy as to justify exposing unlicensed excavators to torts committed against them by third parties. We therefore hold that in the circumstances of this case the fact that appellant had no permit from the city to excavate sand would be no defense to a tort allegedly committed against him by a third party.

Appellant's second proposition is based on the argument that the holder of a license has an action against a third party for damages and is entitled to an injunction for an invasion of the licensee's rights under the license. The trial court's denial thereof was evidently based on the assumption that appellant did not have an interest in the land itself, but had "only the right of profits from the sale of the sand."

■ But that is what appellant's lawsuit is all about—the infringement by dumping mud balls in the sand appellant has the right to take. We hold that a licensee has an action against a third party both for damages and for an injunction to protect its rights granted under the license.

In Bell Telephone Co. v. Baltimore & Ohio R.R., 155 Pa.Super. 286, 38 A.2d 732 (1944), the telephone company had a license from the railroad to maintain manholes and underground conduits on the railroad's premises. The railroad company leased the premises for the construction of a gasoline filling station and underground storage tanks. The telephone company brought suit for damage to the conduits by a third person. The court held:

> "It is true that a license does not confer a right of possession sufficient to support an action in trespass quare clausum fregit . . .. But a licensee may maintain an action of trespass in the nature of common-law case for any invasion or disturbance of the terms of the license whether by the licensor or by third parties."

In Miller v. Inhabitants of Greenwish Township, 62 N.J.L. 771, 42 A. 735 (1899)

the court stated that a person having a license to maintain a sewer across another's land has a cause of action for damages against a stranger who destroys or injures the sewer.

The court in Nahas v. Local 905 Retail Clerks Int'l Ass'n, 144 Cal.App.2d 808, 302 P.2d 829 (1956) stated that although a licensee cannot maintain an action in ejectment or trespass, he could "maintain an action to enjoin or to redress a violation of his right to exercise the license."

And finally the court in Moundsville Water Co. v. Moundsville Sand Co., 124 W.Va. 118, 19 S.E.2d 217 (1942) the court stated:

"A licensee is entitled to protection by injunction against irreparable injury to, or continuous trespass on, its property on the premises, by a third party."

We find the reasoning in these cases to be persuasive and applicable to the case at bar. Appellant is not barred from damages for the harm done or from injunctive relief because his right is based upon a mere license.

Appellee urges that the trial court's judgment can be upheld on this point because of what are two uncontradicted facts: (1) the contract between appellant and the landowner granted appellant only a license and not a leasehold; and (2) that appellee had the owner's permission to dump the mud balls where it did. But as all the cases cited above point out a licensee can bring an action for the harm done to the right to exercise its license. A reading of appellant's petition clearly shows that this is exactly what relief appellant was praying for and nowhere in the petition can it be read that appellant is praying for damages to the land itself. Also as is pointed out in Bell Telephone Co. v. Baltimore & Ohio R.R., supra, the licensor has no more right to interfere with the licensee's exercise of the license than does a third party. It can therefore be no defense for a third party to say it interfered with licensee's rights on the direction of the licensor.

We therefore hold that the trial court committed reversible error when it sustained appellee's motion for summary judgment. The cause is reversed and remanded to the trial court for further proceedings.

BRIGHTMIRE, P. J., and BACON, J., concur.